This is case number 4-16-0656 in re the Marriage of Smith. Actually I'm sorry, the calendar is wrong. Oh. The first case is 656. Or I'm sorry. Is it Smith? That's right. I'm sorry. It's Smith? Okay, so we're good. It's my calendar that's wrong. I was confused as well. I'm sorry. Because the earlier calendar was. Well I'm glad we've got that straight. All right. Attorney McGrath is here on behalf of the appellee. I think the appellants decided not to come to oral arguments. Are you ready to proceed, Ms. McGrath? I am. All right. Good morning, your honors. May it please the court. Your honors, the trial court's ruling in this case with regard to entering a judgment and a joint parenting plan and a comparable parenting schedule was clearly not against the manifest weight of the evidence. It clearly was not, shouldn't have been an obvious or misconstrued facts that the judge came to that conclusion. These four children, we have two 14-year-old boys, we have a 12-year-old daughter, and a 10-year-old daughter. They're all in excellent hands when they're with Mr. Eric Smith, who is the father of the children, who is with me in court today. They are with him on Mondays to Wednesdays, 6 p.m., and then with the mother on Mother Cassie Smith, who is also an excellent parent, Wednesdays to Friday, 6 p.m., with the parties alternating weekends. Yes, as the trial judge recognized, these individuals did have communication issues. I submit to the court, your honors, that any parties going through a divorce have communication issues. But when you look to what they did agree to and what they were able to work towards for their children, this was obviously the appropriate result. The trial court recognized they pushed each other's buttons. But when you look to the memorandum of agreement, which they entered into as of October of 2015, and even before, they were operating under the same parenting schedule that the trial court entered here. And there was no evidence that it was not working for the children. As this court knows, the most important element is how the children are doing and how the parents can work towards the best for the children. In this case, the only thing the parents could not agree with was what was the permanent schedule going to be. They agreed to the youngest child's IEP. They actively participated in that. They agreed that the children should participate in counseling. They also agreed, if necessary or recommended, they would participate in that counseling. They agreed to a holiday schedule. They agreed that the youngest child should attend a Christian school earlier on because it was a smaller school. They agreed that the two older children should be able to work at Mr. Smith's place of business. So, clearly this is a situation where the parties were able to work together and substantially comply with a parenting plan, as is required under the 602.1 factors. The other factor being the residential circumstances. We have the parties both living close, one four and a half miles outside of Hayworth, the other one in Hayworth, the children attending Hayworth schools. It's a perfect situation for both parents to be able to continue to be actively involved with the children, for the children to have as much positive reinforcement from both parents. And as I conceded, Your Honors, yes, there were some communication issues. And quite frankly, at trial, there were some, you know, he's done this or she's done that. And I recognize that every case is different when the court is looking at custody, but I would direct the court to a prior case of this court, and that's In re Marriage of Hacker, which I believe Justice Connect was involved in. And that was similar in the sense that the parties had some minor criticisms of each other, but the court found that they were sufficiently able to cooperate, even though there were some questions of each of them trying to one-up the other. In this case, Your Honors, it's clear that the parenting plan in place and the parenting plan that the court entered was working. There's no evidence that it was not working. If a parenting plan is working, it's not broke, so to say, why try to fix it? I think it is clear, Your Honors, that the trial court's ruling was not against the manifest weight of the evidence. When looking to the best interest standards, again, I think the trial court was right in the ruling he made, and the ruling was not against the manifest weight of the evidence. We obviously have wishes of parents under best interest factors. Parents always may have differences of opinion, but neither parent really attacked the other one or questioned their ability to be a good parent to these children. I would submit to the court that the issues that arose between Cassie and Eric were issues that typically arise in dissolution of marriage proceedings, but they did not rise to the level of affecting the children and the well-being of the children. With regard to the wishes of the child, we did have the two older children who had expressed a desire that the parents have a shared parenting schedule. With regard to the interrelationship of the children with the parents, both parents had witnesses. Both parents testified to their active involvement in the children's lives. The children's adjustment to homeschool and community, again, they're staying in Hayworth. They will continue to attend the Hayworth schools. With regard to any physical violence, there was some testimony from Cassie. However, obviously the trial court, being the judge of the credibility of witnesses and the fact that there was never any type of order of protection warranted, the trial court found that not to be a relevant factor. With regard to the best interest factors to the willingness of the parties to facilitate and encourage a close relationship, again, Your Honors, I would direct the court to the memorandum of agreement that the parties have entered into. They've agreed, and this is almost two years ago now, they've agreed that they will support each other and support the children in having a positive relationship with each other. They will attend parent-teacher conferences together. They have agreed to important factors. They've agreed to an entire holiday and vacation schedule. The only sticking point was would they agree that they would share the time with the children and have a comparable parenting schedule. Now that the court has said this comparable parenting schedule is going to continue, they don't have that. That was their primary disagreement. They don't have that to disagree about anymore. I think the trial court was definitely right in awarding joint parenting as well as a comparable parenting schedule. Again, this case is somewhat similar to another one of the Fourth District cases, and that's in remarriage of, pardon me, Setzinger, which Justice Turner and Justice Kinect were involved in. And I think the facts are somewhat similar in the sense that, again, they had some minor criticisms between the parties, but when it came right down to it and when it came down to the issues concerning the children, they were able to put their heads together, they were able to reach agreement, and they were able to work in the best interest of the children. Your Honors, I believe the trial court's ruling and order is clearly in the best interest of the children, and we ask that the court affirm the ruling in its entirety. I can answer any questions that the court might have. I have one question. If the joint parenting arrangement gets to the point where it's not working, what's the procedure for addressing that changed situation? Well, Your Honor, I would have to submit that unless there's an allegation of some type of serious endangerment, that parenting plan would remain in place, at least under the old statute, for at least a two-year period. I would ask it in a slightly different way. Is there any provision in the plan to resolve disputes? Like a minor dispute regarding some nuance of it. And thank you, Justice Connick and Justice Turner. I think it was also very helpful for the trial court to have assigned the parenting coordinator so that when issues, if issues arise, the parenting coordinator can get involved and work with the individuals to work through their communication issues. And that the trial court put that into place I think is even more helpful for circumstances where there may be some communication issues, and the parenting coordinator can be of help in that matter. I don't know if that's what you were getting at. Yeah, I think that. I appreciate that follow-up. You mentioned the two-year period. You're saying there would have to be a substantial change in circumstances for the joint custody arrangement to be abrogated. Yes, Judge. Okay. And whoever brought a petition, I guess, before the court would bear the burden? Yes. Putting that substantial change in circumstances. Yes, Judge. All right. Thank you, Your Honor. Let me suggest for the benefit of your client, the fact that there aren't any questions would be an indication that this case has been well-briefed by attorneys on both sides, that we understand the issues. And ordinarily we ask or often ask more questions because things are unclear. They're not in this case. You're well-served by counsel. Thank you, Your Honor. Thank you. We'll take this matter under advisement and be in recess until the next case.